UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | | |
|---|---|---|
| SHARA L. MALONE | ) | |
| | ) | |
| V. | ) | NO. 2:15-CV-29 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security | ) | |

## REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636, for a report and recommendation. Plaintiff's applications for disability insurance benefits and supplemental security income under the Social Security Act were denied following a hearing before an Administrative Law Judge ["ALJ"]. This action is for judicial review of that decision. Plaintiff has filed a Motion for Judgment on the Pleadings [Doc. 17], and Defendant Commissioner has filed a Motion for Summary Judgment [Doc. 19].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor

resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 32 years of age at the time of her alleged disability onset date of November 27, 2011. She has a high school education. There is no dispute that she cannot return to any of her past relevant jobs.

Her medical history is set out in the Defendant Commissioner's brief as follows:

> Medical evidence predating Plaintiff's alleged disability onset date of November 27, 2011, shows that an MRI of the cervical spine in March 2006 suggested spinal canal stenosis (Tr. 343). A nerve conduction study in October 2006 indicated bilateral carpal tunnel syndrome (Tr. 341). At numerous visits to Centerpointe Medical Clinic, LLC (Centerpointe) between April 2008 and October 2011, Plaintiff complained of bilateral hand and arm pain, as well as low back pain (Tr. 281, 283-85, 309-10, 313-18, 320, 324). Medical providers recommended weight loss and smoking cessation, and prescribed pain medication (Tr. 281, 283-85, 309-10, 313-18, 320, 324). Neurosurgeon Gregory Corradino, M.D., evaluated Plaintiff in April 2008 and recommended carpal tunnel release surgery, scheduled for April 30, 2008 (Tr. 321).
> Following Plaintiff's alleged disability onset date of November 27, 2011, she complained of low back, hand, and arm pain to Centerpointe medical providers in December 2011, and at three visits between October 2012 and May 2013 (Tr. 280, 361-62, 364). Medical providers continued to recommend weight loss and smoking cessation, and prescribe pain medication (Tr. 280, 361-62, 364). Plaintiff was hospitalized for five days in April 2012 with a urinary tract infection and sepsis (Tr. 262). On physical examination, her extremities were noted to be nontender, with normal range of motion (Tr. 267). Her condition improved with medication, and she was discharged with directions to resume activity as tolerated

(Tr. 262).

Plaintiff underwent a consultative examination with Wayne P. Gilbert, M.D., in June 2012 (Tr. 290-93). She reported carpal tunnel syndrome, low back pain, chronic bronchitis, and obesity (Tr. 290). Regarding her alleged carpal tunnel syndrome, she described pain in her hands and wrists radiating to her elbows, and grip problems (Tr. 290). She reported no surgery, wrist braces, or recent x-rays (Tr. 290). Dr. Gilbert noted that Plaintiff was 32 years old and morbidly obese (Tr. 290, 292). On examination, he observed full range of motion of the wrists and elbows, full grip, and good pinch strength of the fingers (Tr. 292). Plaintiff complained of pain with full flexion of the wrist, and a tingling sensation radiating toward the elbow, but not into the hand (Tr. 292). Dr. Gilbert diagnosed chronic back pain with radiculopathy, bilateral carpal tunnel syndrome, morbid obesity, and chronic respiratory problems including asthma and bronchitis (Tr. 292). Assessing Plaintiff's limitations, Dr. Gilbert opined that she should not walk more than 100 yards, lift more than 50 pounds, lift repetitively, or stand or walk for more than 30 minutes without a change in position (Tr. 293).

Charles Settle, M.D., a state agency medical consultant, completed a physical residual functional capacity (RFC) assessment in June 2012 (Tr. 72-74). Exertionally, Dr. Settle opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand or walk for 6 hours, and sit for 6 hours, in an 8-hour workday; and push or pull without limitation (Tr. 72). Posturally, Plaintiff could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl (Tr. 72-73). She could never climb ladders, ropes, or scaffolds because of morbid obesity (Tr. 72-73). Assessing Plaintiff's manipulative limitations, Dr. Settle found that she could reach and feel without limitation, but was limited to frequent handling and fingering bilaterally (Tr. 73). Environmentally, Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation, but was otherwise without limitation (Tr. 73-74). Dr. Settle opined that Plaintiff's medically determinable impairments could reasonably be expected to cause pain, but her alleged symptoms and limitations were not supported by the totality of the evidence, rendering her statements only partially credible (Tr. 74).

Plaintiff met with a caseworker at Frontier Health in July 2012 for an intake examination (Tr. 345-46). She complained of depression and anxiety for the past three months (Tr. 345). Plaintiff underwent a psychological consultative examination with B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist, in September 2012 (Tr. 351-55). Describing her medical history, Plaintiff reported degenerative disc disease, carpal tunnel syndrome, hypertension, asthma, and chronic bronchitis (Tr. 352). She reported pain in her back and arms (Tr. 352). Dr. Lanthorn noted no history of formal psychiatric or psychotherapeutic treatment (Tr. 353). He diagnosed depression, nicotine dependence, anxiety disorder, pain disorder, and personality disorder (Tr. 354). Dr. Lanthorn opined that Plaintiff had no problems learning up to moderately complicated tasks in the work setting, possible mild difficulties interacting with others in the workplace, mild limitation in sustaining concentration and effectively persisting at tasks, and mild limitation

3

in dealing with change in the requirements of the workplace (Tr. 355).

[Doc. 20, pgs. 2-4].

On August 29, 2013, the ALJ conducted an administrative hearing. Plaintiff testified that she was five feet nine inches tall and weighed 280 pounds (Tr. 32). She stated that she had a driver's license, smoked cigarettes and was a high school graduate (Tr. 32-33). She stated that she had bilateral carpal tunnel problems in both hands but worse in the dominant right hand (Tr. 33). She stated she had no ability to grip and could barely write. She stated that she had no insurance and had not had surgery for her carpal tunnel syndrome. *Id.* She stated that it was far worse at the time of the hearing than in 2006 when the condition was confirmed (Tr. 32-33).

Plaintiff testified regarding her back pain. She described it as going down the left hip and leg, and that her feet and legs swell. She stated her back pain was aggravated by walking and lifting, and that she had to have help getting out of bed (Tr. 34-35).

She stated that regarding her carpal tunnel problems, the pain went from her fingertips to elbows. She said that sometimes she could not make a fist. She didn't like to wear a brace. She said she had to take Lortab and Neurontin and that they were helpful "at times" (Tr. 35). Plaintiff also complained of breathing difficulties, becoming short of breath with physical exertion and having problems with fumes and dust (Tr. 36).

She stated that she was taking Cymbalta for her depression and anxiety. It reportedly caused her to have trouble sleeping. Another medication, Saphris, was tried for two days but she discontinued it because it made her "hurt all over as soon as I took

4

it." She said she had not slept for four days and nights before the hearing. She said she has anxiety to the point that she felt that she was going to have a heart attack at the hearing, and had panic attacks (Tr. 37-38).

The ALJ asked Plaintiff how long she could walk without sitting down and resting. She stated she had walked 12 steps recently and then had to sit down and rest (Tr. 38). She said she was fidgety sitting and needed "to get up now because my back is killing me" (Tr. 39). She said she could not lift and carry anything heavier than her pocketbook. She said she lived with her mother and tried to do the dishes and at least start the laundry, but her hands and arms were killing her by the time she was done folding the laundry. She stated she cannot do any yard work because she cannot breathe and cannot walk (Tr. 38-40).

Under questioning from her attorney, she also testified that she has hidradenitis suppurativa, which she said caused suppurating boils which made her smell and prevented her from going out in public. (Tr. 40). She stated she saw a counselor three times a month and a psychiatrist every three months. She said she used to go to church but did not do so any more. She also said she no longer socializes with her friends (Tr. 40-41). She spends most of her days "sitting or moping" at home (Tr. 42). She also said that after not sleeping for days she would sleep for two days (Tr. 42).

After listening to corroborating testimony from the Plaintiff's mother, the ALJ took the testimony of Mr. Bentley Hankins, a vocational expert ["VE"]. The ALJ asked the VE to assume a person of Plaintiff's age, education, and past relevant work, who was

5

limited to sedentary exertion with the limitation of "no climbing of ladders, ropes and scaffolds, otherwise occasional postural activities such as climbing stairs and ramps, balancing, stooping, kneeling, crouching and crawling, frequent but not continuous handling and fingering, no concentrated exposure to vibration or pulmonary irritants, able to understand, remember and carry out simple instructions in a work environment involving infrequent changes, and no more than occasional interaction with the public." (Tr. 54-56).

With those vocational characteristics and that residual functional capacity ["RFC"], the VE identified jobs as a document sorter, with 72,000 in the nation and 1,550 in the region; addressing clerk, with 12,500 in the nation and 70 in the region; and toy stuffer, with 4,200 in the nation and 150 in the region which that person could perform (Tr. 57).

There is no dispute that this was the question asked and the jobs identified with respect to the Plaintiff's RFC as found by the ALJ. However, it is likewise undisputed that if the Plaintiff had the same RFC except that she could only do *occasional* handling and fingering, as opposed to frequently doing so, the only job the VE could identify that such a person could perform would be that of surveillance system monitor which had only 11,000 positions nationally and 150 in the region. With respect to those jobs, the VE testified that "most of these positions go to individuals with prior experience in protective service occupations." (Tr. 57). Essentially, that means that this job would not be available to the Plaintiff.

6

On September 16, 2013, the ALJ rendered his hearing decision. He found that Plaintiff had severe impairments of chronic low back pain, cervical kyphosis, bilateral carpal tunnel syndrome, asthma, obesity, a depressive disorder, and an anxiety disorder. The ALJ correctly noted that since some severe impairments were found to exist, he was required to also consider the limitations imposed by those impairments he found were not severe (Tr. 11). He found that Plaintiff's alleged migraines, bilateral leg swelling, hidradenitis suppurativa, and hypertension were not severe impairments (Tr. 12-13).

The ALJ found that Plaintiff had moderate limitations in her activities of daily living, social functioning, and concentration, persistence or pace. He found that she had not experienced any episodes of decompensation (Tr. 13).

The ALJ then stated that Plaintiff "has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she cannot climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs and occasionally balance, stoop, kneel, crouch, and crawl. She can perform frequent, but not continuous, handling and fingering, and she should avoid concentrated exposure to vibration or pulmonary irritants. The claimant is able to understand, remember and carry out simple instructions and adapt to infrequent changes in the work setting. She is limited to work that requires no more than occasional interaction with the public." (Tr. 14).

He then discussed the medical evidence. With respect to Plaintiff's carpal tunnel syndrome, he stated that Plaintiff's physician with respect to this condition, Dr.

7

Corradino, had scheduled a right carpal tunnel release procedure for April 23, 2008. However, Plaintiff did not undergo that procedure. He stated that the consultative examiner, Dr. Gilbert noted a full range of motion in Plaintiff's wrists in June 2012, mentioning that she had some pain on full flexion, and radiating tingle with testing. However, he also stated she had a full grip and good pinch strength in her fingers (Tr. 15).

The ALJ discussed her asthma. Although the condition constituted a severe impairment, it was controlled well enough that in May and June 2013, tests showed Plaintiff's pulse oximetry level was 98% while anything over 95% was considered normal (Tr. 15). He also discussed Plaintiff's obesity as required by Social Security Ruling ["SSR"] 02-1p, and took this condition into account when reaching his conclusions. He noted the State Agency medical consultants' reports, which he utilized extensively in his RFC finding, except that he gave Plaintiff enough credence to decide that she was capable of only sedentary exertion as opposed to the light exertion found by those doctors. He noted that they had opined that Plaintiff could perform frequent handling and fingering (Tr. 16).

He then discussed Plaintiff's mental health treatment, noting that Dr. Lanthorn's consultative examination resulted in him finding only mild difficulties (Tr. 16). He pointed out that Plaintiff did not originally allege a mental impairment until after the initial level of agency consideration. When she did allege it, at the reconsideration level, he noted that the State Agency psychologist had opined she had only mild mental

limitations (Tr. 17).

The ALJ found that Plaintiff was not entirely credible (Tr. 17). He noted the activities of daily living she reported to Dr. Lanthorn, and which contrasted with her account at the hearing set out above. She reported to Dr. Lanthorn that she straightened up the house, did her own laundry, did some microwave cooking and light housekeeping. (Tr. 353). The ALJ mentioned that Plaintiff had indicated in a function report that she enjoyed reading, could handle changes in a routine, and had no difficulty getting along with family, friends, neighbors or authority figures (Tr. 17). He stated that these activities and other traits were not indicative of a person who was totally disabled. He also stated that the medical treatment had been routine and conservative, and was not what one would expect in the case of a totally disabled person. He noted that no treating or examining force had placed any restrictions on the Plaintiff which would preclude her from working within the parameters of the RFC finding (Tr. 17).

Regarding her mental impairment, the ALJ noted she sought no treatment until eight months after her alleged onset date. Her treating physician had stated Plaintiff was alert and oriented and pleasant and talkative. Dr. Lanthorn had opined that Plaintiff was only partially credible in her allegations of psychologically disabling conditions, and displayed no memory deficits, problems with concentration, and an appropriate affect (Tr. 18).

The ALJ noted that Plaintiff no longer had health insurance, but pointed out that there were alternatives to this. He pointed out that a service that provides discounted

9

Case 2:15-cv-00029-JRG-MCLC   Document 21   Filed 01/12/16   Page 9 of 13   PageID #: 467

medical treatment had been suggested to Plaintiff by her physician but there was no indication she sought such support (Tr. 18).

He then discussed the weight given to the expert opinions. He gave great weight to the State Agency doctors, but felt that Plaintiff was restricted to sedentary work, rather than light work as they had opined. He gave less weight to Dr. Gilbert, finding that Dr. Gilbert's significant walking, sitting and standing limitations were not supported by his findings on examination of Plaintiff. He also noted that the lifting ability of 50 pounds opined by Dr. Gilbert was inconsistent with his opined restrictions. He gave some weight to the State Agency psychologist and Dr. Lanthorn, but again gave some credence to Plaintiff in finding that she had a severe mental impairment and in limiting her to simple jobs with no more than occasional interaction with the public (Tr. 18).

After noting that he had reduced the RFC to accommodate Plaintiff's "alleged limitations with regard to back, neck, wrist and hand pain, as well as asthma and obesity," by limiting her to sedentary work, the ALJ found her subjective complaints lacked support in the record to the extent that they would conflict with his RFC finding (Tr. 19).

After finding that Plaintiff could not return to any past relevant work with her present RFC, the ALJ pointed out the jobs enumerated by the VE for a person with Plaintiff's RFC and vocational characteristics. Finding that Plaintiff could perform a substantial number of jobs, he found that she was not disabled (Tr. 20).

Plaintiff asserts that the ALJ's decision was not supported by substantial evidence.

10

In this regard, her sole argument is that he erred in finding that Plaintiff could frequently use her hands for fingering and handling. As stated above, the VE testified that there would be basically no jobs at the sedentary level with Plaintiff's RFC if she were limited to only occasionally handling and fingering objects.

Plaintiff points to the fact that there are numerous statements from various treating sources mentioning the Plaintiff's bilateral carpal tunnel syndrome. This included a mention made of this condition by the consultative examiner, Dr. Gilbert. However, Dr. Gilbert spoke of her subjective complaints in this regard, including the asserted pain and inability to grip even a lawnmower or weed eater (Tr. 290), and yet noted "full grip and good pinch strength in the fingers" (Tr. 292). While he anticipated limitations in standing or walking and sitting which were ultimately rejected by the ALJ, he noted no anticipated limitation with respect to handling or fingering. In fact, he opined she should not lift over 50 pounds (Tr. 293).

The only other medical opinion regarding this is from State Agency reviewing physician Dr. Charles Settle, who had before him the records of Plaintiff's treating physicians and Dr. Gilbert's consultative examination. Dr. Settle opined that Plaintiff would have some limitations in handling and fingering, but opined that these limitations would result in Plaintiff being able to only engage in fingering and handling on a "frequent" basis, as opposed to constantly (Tr. 73).

Plaintiff's treating doctors did not opine as to the limitations imposed by Plaintiff's carpal tunnel syndrome, or suggest restrictions on activity in their treatment

11

notes. It is true that Dr. Corradino specifically treated Plaintiff for her carpal tunnel condition and scheduled surgery which was never performed. However, that was in April 2008, and Plaintiff does not allege she became disabled until November 27, 2011. Indeed, in April 2008, Plaintiff was still working as a certified nurse's assistant, and continued in that position, which required heavy exertion, until November 2011 (Tr. 201). It appears from a review of the medical records and the documents filed relative to her applications for benefits that her carpal tunnel problems took a "back seat" to her complaints regarding her back and leg pain.

At the very least, Dr. Corradino's notes coupled with Plaintiff's history of working at a heavy job for 3½ more years shows that Plaintiff's carpal tunnel syndrome at that time was not disabling. That means that the opinions of Dr. Gilbert and Dr. Settle are the *only* functional capacity assessments regarding the limiting effects of Plaintiff's carpal tunnel syndrome or any of her other physical impairments.

Plaintiff points to the fact that she was treated for, or at least discussed, her carpal tunnel complaints with treating physicians on many occasions as opposed to Dr. Gilbert only conducting a one-time exam on a "good day." However, the notes from the office visits did not define a level of restriction, only the existence of the condition. Also, they do not contradict the opinion of Dr. Gilbert, who did not opine as to a level of restriction based on this condition. Likewise, they do not contradict the opinion of Dr. Settle, who was the only doctor who did determine a level of restriction of any kind in handling or fingering.

There is substantial evidence to support the ALJ's RFC finding and the opinion of the VE. The ALJ properly considered and applied Social Security regulations and rulings. Accordingly, it is respectfully recommended that Plaintiff's Motion for Judgment on the Pleadings [Doc. 17] be DENIED, and Defendant Commissioner's Motion for Summary Judgment [Doc. 19] be GRANTED.[1]

Respectfully submitted,

 s/ Clifton L. Corker
United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).